**Not for Publication**

## United States District Court
## for the District of New Jersey

JOSHUA GABRIEL,

                *Plaintiff*,

    v.

VERIZON and COMMUNICATIONS
WORKERS OF AMERICA,

                *Defendants*.

Civil No: 14-3606 (KSH)

**Opinion**

__Katharine S. Hayden, U.S.D.J.__

Joshua Gabriel commenced this action against Verizon, his former employer, and Communications Workers of America, his former union, and asserts claims against them regarding his termination in 2012.  As to Verizon, Gabriel argues that the company fired him in breach of an alleged employment agreement and on discriminatory grounds, citing both his race and alleged disability.  He also argues that the union acted in concert with Verizon to cause his termination, and thereafter failed to provide him adequate guidance and representation regarding his grievance. Verizon alone moves to dismiss and, for the following reasons, the Court grants in part and denies in part.

### I.    Factual History

Joshua Gabriel is a resident of East Stroudsburg, Pennsylvania and was employed by Verizon from 2007 to 2012.  He worked on the consumer side of Verizon's operations, "answering customer and client complaints," and assisting in the "sale[] of [Verizon's products and services] with potential or existing customers."  (Complaint ¶ 3.)

In early 2012, and after nearly five years of employment with the company, Gabriel received a "President Award" from Verizon, which included an all-expenses paid trip to Miami

Beach, Florida.  Gabriel alleges that, when he arrived in Miami, the company "encouraged [him] to engage in [a] 'Meet and Greet'" event and to "party … and participate in an open bar at the vacation location."  (Complaint ¶ 4.)   Gabriel alleges that he was "constrained to participate … in the imbibing of alcoholic beverages" with other Verizon employees (Complaint ¶ 5), and that the "circumstances" of this affair ultimately got the best of him.  Gabriel claims that, as a result of his "participat[ion]" in the award party he "los[t] his mental consciousness and awareness of his surroundings … and behavior."  He apparently became so intoxicated that he was arrested and brought before the local judiciary for charges not detailed in the complaint.  (Complaint ¶ 11.)

As a result Gabriel was suspended from his duties at Verizon on April 25, 2012.  He consulted his union, Communications Workers of America ("CWA"), for guidance, but claims that he was misled.  Gabriel alleges that CWA "urged" him "to engage in an Alcohol Rehabilitation Program" and "promise[d] that participation in this Program would cause [Gabriel's] employment status with Verizon to be reinstated."  (Complaint ¶ 6.)  Gabriel went to a rehabilitation facility in Florida for 58 days, but when he completed it and returned to New Jersey he was fired. (Complaint ¶¶ 7-8.)

Following his termination Gabriel again consulted his union representative—this time in an attempt to file a grievance against Verizon—and claims that he was again given improper guidance.  (Complaint ¶¶ 4-6.)  While at first CWA agreed to initiate an arbitration proceeding against Verizon, Gabriel alleges that the union failed to "sincere[ly] represent[]" him in that action. (Complaint ¶ 9.)  Specifically, Gabriel claims that, after CWA failed to diligently pursue the arbitration, he "had to personally apply for an Appeal of Arbitration"—a process that had allegedly "gone into [l]imbo" as of the filing of his complaint here.  (Complaint ¶ 10.)

On August 14, 2012, Gabriel filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging discrimination on the basis of race and disability in violation of Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act of 1990.  He submitted, in pertinent part, that as a result of the award party "incident," he was "diagnosed as having a disability and began a short-term disability (STD) leave period," and that after he "returned to work with no restrictions, [he] was suspended[] on July 9, 2012, and was discharged on July 20, 2012." On August 30, 2012, following its investigation, the EEOC issued to Gabriel a right to sue letter, which indicated that the EEOC could not conclude that the information Gabriel provided established a violation of either statute.  A year and a half later, Gabriel retained counsel and began the instant action in state court, which Verizon removed on June 5, 2014.

## II.    Gabriel's Claims

Gabriel asserts seven causes of action against Verizon and CWA, all of which stem from the events leading to and following his termination from the company.  Gabriel alleges that the circumstances of the award party, including its physical location in an area that "has a historic record of racial discrimination and racial adversity," demonstrate Verizon's discriminatory animus towards him.  He claims that Verizon suspended and ultimately terminated him in a discriminatory manner and in breach of his alleged employment contract with the company.  Gabriel's claims against CWA concern the advice and representation he received with regard to the same events: first, that the union failed to make good on its promise that Gabriel would be reinstated following his completion of a rehabilitation program; second, that the union failed to adequately and

sincerely represent him in his claims against Verizon.  As against both defendants, Gabriel claims that he is entitled to punitive damages.[1]

CWA answered the complaint on June 26, 2014 [D.E. 7], substantially denying the allegations raised against it.  Verizon moved to dismiss on the same date [D.E. 6], and requests that the complaint be dismissed in its entirety.  That motion is now before the Court.

## III.   Standard

The Federal Rules of Civil Procedure require pleadings to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This language requires that the complaint satisfy a "plausibility" standard in order to survive dismissal under Fed. R. Civ. P. 12(b)(6). The complaint therefore must "set out 'sufficient factual matter' to show that the claim is facially plausible. This then 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "'[U]nadorned, the-defendant-unlawfully-harmed-me accusation[s]'" do not suffice, nor do "'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Id*. at 210 (quoting *Iqbal*, 556 U.S. at 678).  In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court takes as true the factual allegations in the complaint and disregards legal conclusions. See *Fowler*, 578 F.3d at 210-11.

---

[1]     In count seven of his complaint, Gabriel asserts a "claim" for punitive damages as a component of his relief.  However, it is well settled that "punitive damages" does not constitute a separate cause of action.  *See, e.g., Incorvati v. Best Buy Co., Inc*., 2010 WL 4807062, at *12 (D.N.J. Nov. 16, 2010).  This count therefore will be dismissed from the complaint, but the Court notes that Gabriel has preserved his right to pursue punitive damages as a remedy if allowed under the remaining causes of action. See N.J.S.A. § 2A:15-5.11.

## IV.     Discrimination Claims

In count one of his complaint, Gabriel asserts claims for discrimination against Verizon under Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act of 1990, the New Jersey Law Against Discrimination ("NJLAD") and the Constitutions of the United States and the State of New Jersey.  The Court addresses each in turn.

### a.   *Title VII and ADA Claims*

Verizon argues that Gabriel's Title VII and ADA claims fail as time-barred and the Court agrees.  Under both statutory schemes, the injured party is required to undertake and complete certain steps before commencing a private action.  The process begins with the filing of a charge of discrimination with the EEOC, which must be reviewed and resolved within 180 days.  After 180 days, if the EEOC has not resolved the charge, it must notify the complainant, generally through the issuance of a "right-to-sue" or "notice of rights" letter, in which "the EEOC states that it sees no reason to take action on the complaint."  Under both Title VII and the ADA, a complaint alleging discrimination must then be filed "within ninety days of the date on which the complainant has notice of the EEOC's decision not to pursue the administrative charge," 42 U.S.C. § 2000e-5(f)(1); s*ee also Ebbert v. DaimlerChrysler Corp.*, 319 F.3d 103, 108 n.4 (3d Cir. 2003), and the complainant is presumed to have received that notice within three days of mailing.  The Third Circuit has "strictly construed the 90-day period and held that, in the absence of some equitable basis for tolling, a civil suit filed even one day late is time-barred and may be dismissed."  *Burgh v. Borough Council of Montrose*, 251 F.3d 465, 470-71 (3d Cir. 2001)

Here, the EEOC mailed Gabriel's right to sue letter on August 30, 2012 and, in the absence of evidence to the contrary, the Court finds that he received the same on September 3, 2012, three business days later.  Gabriel had to commence his action for discrimination under Title VII and

the ADA by December 3, 2012. He failed to do so. The complaint in this action was not filed until April 17, 2014—almost a year and a half after expiration of the statute of limitations. Because Gabriel fails to provide any explanation for this delay—nor does he identify any basis for equitable tolling despite the fact that it is his burden to do so, *see Dicroce v. Norton,* 218 Fed. Appx. 171, 173-74 (3d Cir. 2007) ("[T]he plaintiff bears the burden of proving that equitable tolling applies.")—his claims under Title VII and the ADA are dismissed.

      b. *New Jersey LAD Claims*

Gabriel also claims that he was discharged in violation of the NJLAD and cites Verizon's alleged discrimination against him on the basis of his race and purported disability as grounds for the cause of action. The Court considers each basis separately under the statute.

Claims for discrimination under the NJLAD are analyzed under the burden-shifting framework set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Davis v. City of Newark*, 285 F. App'x 899, 903 (3d Cir. 2008). Pursuant to this framework, a claim will survive motions to dismiss only where the plaintiff adequately alleges that (1) he belongs to a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) the adverse action occurred under circumstances that give rise to an inference of discrimination. *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403 (3d Cir. 1999). "Once the plaintiff establishes a prima facie case, the burden of production then shifts to the defendant, who must articulate a legitimate, nondiscriminatory reason for its actions." *Davis*, 285 F. App'x at 903. Should the defendant satisfy this showing, the burden "shifts back to the plaintiff to show that the defendant's proffered reason was not the true reason for the employment decision, but was merely a pretext for discrimination." *Id.* at 903.

Gabriel's claim for racial discrimination fails at the first step in this analysis—he cannot state even a prima facie case for his discrimination counts. While the complaint itself does not specify Gabriel's race, the Court understands from the moving papers that he is an African American and therefore member of a protected class. *See Rogers v. Alt. Res. Corp.*, 440 F. Supp. 2d 366, 371 (D.N.J. 2006) ("Rogers is a member of a protected class, as he is an African American."). The Court also assumes that he satisfies the second and third element of this analysis—that he was otherwise qualified for the position and that his termination constituted an adverse employment action. But as to the fourth element, Gabriel fails entirely to explain how the circumstances surrounding such action plausibly give rise to an inference of discrimination.

Apart from his conclusory allegation that "Verizon through its agents, servants and employees, did discriminate against [him]," Gabriel fails to assert any factual claim regarding the allegedly discriminatory nature of his discharge. He argues only that "Verizon [and its employees] were aware of the plaintiff Joshua Gabriel's racial and ethnic background," (Complaint ¶ 5), and that the "area of Miami Beach where the party, [a]ward and 'vacation' were held has a historic record of racial discrimination and racial adversity." (Complaint ¶ 6.) Even accepted as true, however, these allegations are insufficient under *Twombly* to give rise to an inference of discrimination. Verizon's awareness of Gabriel's race hardly suggests that he was terminated on that basis, and Gabriel's argument that the location of the award party—at which he became so intoxicated that he lost "his mental consciousness" only to "subsequently learn[] that he was incarcerated"— was prompted by racial animus is sheer speculation. Gabriel "cannot sustain a claim simply by asserting an event and then asserting it was motivated by racial bias," *Davis*, 285 Fed. App'x at 903, and his failure to allege more is fatal to his NJLAD claim for discrimination on the basis of race.

Gabriel's NJLAD claim for discrimination on the basis of his alleged disability fails for similar reasons.  To state a prima facie cause of action for disability discrimination under the NJLAD, the employee must allege (1) that he was handicapped; (2) that he was otherwise qualified to perform the essential functions of the job, with or without accommodation by the employer, and was performing at a level that met the employer's expectations; and (4) that the employer sought someone to perform the same work after he left.  *Dicino v. Aetna U.S. Healthcare*, 2003 WL 21501818, at *12 (D.N.J. Jun. 23, 2003) (Simandle, J.) (citing *Muller v. Exxon Research & Eng'g Co.*, 345 N.J. Super. 595 (App. Div. 2001)).

As a threshold matter, Gabriel fails to identify or explain the nature of his alleged disability.  While his charge of discrimination to the EEOC indicates that he was "diagnosed as having a disability" following the "incident at [the] company outing," Gabriel's affidavit, which was (inappropriately) filed in support of his opposition, refutes the suggestion that he suffers from alcoholism.  (Plaintiff's Ex. A, ¶ 11 (stating that he did not need to attend the rehabilitation program because he "was not an alcoholic or drug user")).  Even assuming, however, that he states a disability for the purposes of this analysis, Gabriel nonetheless fails to allege that although he was disabled, he was otherwise qualified to perform the essential functions of his job, with or without the accommodation by his employer, that he was performing at a level that met his employer's expectations, and that his employer sought someone to perform the same work after he left.  The Court cannot assume all elements of his claim, even at the pleading stage, and Gabriel's failure to allege facts sufficient to support a claim of disability discrimination under the NJLAD compels dismissal.  *See Bobo v. Wildwood Pub. Sch. Bd. of Ed.*, 2014 WL 2215935, at *26 (D.N.J. May 28, 2014) (Kugler, J.) ("Though the Court must take Plaintiff's facts as true for purposes of a motion to dismiss and make inferences in his favor, the Court is not required to read facts into

Plaintiff's Complaint that simply do not exist and are necessary for purposes of stating a claim under the NJLAD.").

        c.   *Constitutional Claims*

Gabriel also appears to allege that Verizon violated his rights under the United States and New Jersey Constitutions.  Notwithstanding Gabriel's failure to identify what provisions of either constitution were violated—or how—the constitutional claims must be dismissed because Verizon is not a state actor.  *See McBryde v. Cont'l Airlines, Inc.*, 2009 WL 3242133, at *3 (D.N.J. Oct. 6, 2009) (Chesler, J.) (dismissing wrongful termination claims purportedly raised under the U.S. and New Jersey Constitutions because there was "no indication that any such rights apply to private employment actions."); *see also Kreschollek v. S. Stevedoring Co.,* 223 F.3d 202, 205-08 (3d Cir. 2000) (holding that due process claims against a private employer fail due to absence of state action)

## V.    Breach of Contract Claims

In counts two and three of the complaint, Gabriel asserts against Verizon claims regarding breach of an alleged agreement.  To state this claim, he must allege the existence of a contract, the failure of the other party to perform its obligations thereunder, and damages flowing from breach. *See Sheet Metal Workers Int'l Ass'n Local Union No. 27 v. E.P. Donnelly, Inc*., 737 F.3d 879, 900 (3d Cir. 2013)

To the extent Gabriel argues that he was terminated in breach of Verizon's "Code of Conduct," that claim fails for failure to state the existence of an agreement at the outset.  "In order to state a claim based on an employment manual or widely distributed policy, the plaintiff must point to a provision that contains an express or implied promise concerning the terms and conditions of employment."  *Lopez v. Lopez*, 997 F. Supp. 2d 256, 277 (D.N.J. 2014) (citations

omitted).  Furthermore, "an implied contract based on an employment manual may be negated by the inclusion of a 'clear and prominent' disclaimer."  *Id.* at 261.

The Verizon Code of Conduct at issue here states that "This Code does not give you rights of any kind … Employment with Verizon is 'at will,' which means that you or Verizon may terminate your employment at any time."  Hale Decl., Ex. E at 3.  Considering this explicit disclaimer, the Court finds—as many others have before—that the Verizon Code of Conduct does not create any contractual rights to employment.  *See Lopez*, 997 F. Supp. 2d at 277-78 (finding that "Verizon's Code of Conduct is not an employment contract and cannot furnish the basis for a contract claim"); *Polonski v. Verizon Commc'ns Corp.*, 2011 WL 589585, at *9 (D.N.J. Nov. 22, 2011) (Wolfson, J.) (finding the Verizon disclaimer sufficiently "clear [and] prominent" and dismissing contract claims on that basis); *Horan v. Verizon N.J., Inc.*, 2014 WL 1672366 (App Div. Apr. 29, 2014) (finding that Verizon's Code of Conduct disclaimer is "sufficient to rebut any possible implied promise" and noting that the "disclaimer could not have been clearer").  Consequently, to the extent based on Verizon's Code of Conduct, Gabriel's claims for breach of contract are dismissed.

**VI.  CWA Claims**

In counts four and five, Gabriel asserts a series of claims against both CWA and Verizon. No count makes clear what cause of action is asserted, and all are predicated on substantially the same conduct.  In count four, Gabriel argues that CWA provided him "negligent and untoward advice" following the award party incident; that he was "urge[d]" to "engage in an Alcoholic Rehabilitation Program upon the implied and express promise that participation in this Program would cause [his] employment status with Verizon to be reinstated; and that, following his ultimate termination, CWA failed to provide him "diligent and sincere representation" against Verizon.

(Complaint, Count Four ¶¶ 16-10.)  In count five, Gabriel argues that CWA "together with the conduct of Verizon knew or should have known of [sic] the circumstances caused a wrongful breach of the express and implied promise to restore and reinstate [Gabriel] to his position of employment with Verizon with retroactive benefits." (Complaint, Count 5 ¶ 5.)  As to both claims, Gabriel seeks "money damages and such terms as shall be deemed just together with full restoration of employment status and employment benefits and retroactive pay and pension benefits."  (Complaint, Counts 4, 5.)

The Court reads these counts to (again) challenge Gabriel's termination from Verizon and, more specifically, CWA's lack of diligence in representing his interests both before and after he was discharged from the company—namely, claims for wrongful discharge against Verizon and CWA, and for breach of its duty of fair representation against CWA.  Verizon, as the only moving defendant here, argues that Gabriel's wrongful termination claim is preempted by Section 301 of the Labor Management Relations Act ("LMRA").  The Court agrees.

Section 301(a) of the LMRA provides that "[s]uits for violations of contracts between an employer and a labor organization representing employees in an industry affecting commerce … may be brought in any District Court of the United States having jurisdiction over the parties." Considering this provision, the Supreme Court in *Teamsters v. Lucas Flour Co.*, 369 U.S. 95 (1962) found that Section 301 completely preempts any state-law cause of action for violation of a collective bargaining agreement.  Subsequently, in *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202 (1985), the Court further extended the scope of this preemption to include tort, as well as contract, claims implicating "questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement."  The Court noted further in *Franchise Tax Bd. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 23 (1983)

that "[T]he pre-emptive force of § 301 is so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization. Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of § 301."  And to determine whether the state law claim is preempted by Section 301, the court must consider whether the claim is:  (1) founded directly on rights created by a collective-bargaining agreement, or (2) substantially dependent upon an analysis of a collective bargaining agreement.  *See Caterpillar, Inc. v. Williams*, 482 U.S. 386, 394 (1987).

While the Court largely is left guessing as to what claims are asserted in counts four and five, it finds that, to the extent they are stating claims for wrongful discharge, Section 301 of the LMRA preempts them.  In connection with both counts and against both defendants, Gabriel puts at issue his apparent "wrongful termination" (Complaint ¶ 8), the alleged "wrongful breach of the express and implied promise to restore and reinstate [him] to his position of employment with Verizon with retroactive benefits as set forth above," and the "lack of diligent and sincere representation from CWA in an attempt to arbitrate a restoration of his employment rights." Resolution of these claims will require interpretation of multiple provisions of the collective bargaining agreement, including, among others, the requirement that Gabriel be discharged only upon "just cause" under Article 127, Section 2, and the grievance and arbitration procedures in Articles 129 and 131.  *See Krashna v. Oliver Realty, Inc.,* 895 F.2d 111, 115 (3d Cir. 1990) ("If viewed as a wrongful discharge claim, we believe the state claim in this case would be completely preempted.");  *Lee v. N.J. Transit, & Amalgamated Transit Union Local 825*, 2010 WL 1382392, at *4 (D.N.J. Apr. 6, 2010) (Cavanaugh, J.) ("A breach of contract/fair representation claim based entirely upon the terms of a collective bargaining agreement is, accordingly, preempted by the LMRA.")

As in *Costa v. Verizon, N.J., Inc.,* 936 F. Supp. 2d 455 (D.N.J. 2013), these claims are "substantially dependent upon analysis of the terms of [the] collective bargaining agreement" and therefore are preempted by the LMRA.  In *Costa*, the plaintiff, Michael Costa, was fired by Verizon of New Jersey, Inc. after the company became aware that he was "performing his job duties while under the influence of drugs and alcohol" and "made racial slurs at the workplace."  Even though plaintiffs removed reference to the collective bargaining agreement in the complaint, the district court found that Costa's claims for wrongful termination were necessarily intertwined with the CBA, and concluded that his common law claims were preempted on that basis.  Specifically, to adjudicate his claims the court would need to "determine[] whether his alleged use of racial slurs and employee misconduct constituted 'just cause' for Verizon's termination of his employment, whether Verizon utilized the proper procedure in discharging him, and whether he completed the appropriate steps of the grievance procedure prior to filing this lawsuit."  *Id.* at 463.  Such is the case here.

What Gabriel appears to allege is a "hybrid" claim for breach of contract by Verizon and breach of the duty of fair representation by CWA.  To do so, he is required to show that (1) the employer breached the collective bargaining agreement, and (2) the union breached its duty of fair representation in redressing his grievance against the employer.[2]  Critically, however, he must also assert this claim within six months of the underlying violation.  *DelCostello v. Int'l Brotherhood of Teamsters*, 462 U.S. 151 (1983).  The six-month period, applicable to both defendants here,

---

[2]      While these two claims are viewed as "inextricably intertwined" and necessary components of the hybrid LMRA cause of action, the claim for breach of the duty of fair representation actually is implied by Section 9(a) of the National Labor Relations Act. 29 U.S.C. § 159(a). A complaint that sounds in a duty of fair representation claim alleges "a breach by the union [of] a duty grounded in federal statutes and …federal law therefore governs the cause of action." *Scott v. Graphic Commc'ns Int'l Union, Local 97-B*,  92 F. App'x 896, 904 (3d Cir. 2004) (citing *Vaca v. Sipes*, 386 U.S. 171, 177 (1967)); *see also BIW Deceived v. Local S6, Indus. Union of Marine & Shipbuilding Workers*, 132 F.3d 824, 830 (1st Cir. 1997) ("Preemption also can occur by operation of the so-called duty of fair representation").  As such, and to the extent this claim was intended to be raised under state law, it also is preempted.

commences "when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation." *Hersh v. Allen Prods. Co*., 789 F.2d 230, 232 (3d Cir. 1986) (quoting *Metz v. Tootsie Roll Indus., Inc.,* 715 F.2d 299, 304 (7th Cir. 1983)). Therefore, where an employee sues a union for breach of its duty of fair representation, the limitations period commences when "the plaintiff receives notice that the union will proceed no further with the grievance." *Hersh*, 789 F.2d at 232 (quoting *Bruch v. United Steelworkers of Am.*, 583 F. Supp. 668, 670 (E.D. Pa. 1984)). Even if there has been no explicit notice, the statute of limitations begins to run when "the futility of further union appeals became apparent or should have become apparent." *Scott v. Local 863, Int'l Brotherhood of Teamsters*, 725 F.2d 226, 229 (3d Cir. 1984).

While Verizon argues that Gabriel's claim under Section 301 must be dismissed as time-barred, at this time the Court lacks information sufficient to make such a determination.  Gabriel alleges that the arbitration proceeding against Verizon went "into [l]imbo" at some point prior to the commencement of this action.  He also claims that he was required to "personally apply for an Appeal of the Arbitration."  Although these events will likely establish when Gabriel must have realized the "futility" of further reliance on his union's representation, neither party identifies, even vaguely, when either occurred.  Because the statute of limitations is an affirmative defense—one for which the defendant bears the burden—the Court finds Verizon's showing insufficient to compel dismissal here.  Accordingly, Gabriel's claim under Section 301 of the LMRA survives for the time being, and the parties are directed to engage in limited discovery for the purposes of gathering information about the relevant dates.

**VII.**   <u>**Conclusion**</u>

      For the foregoing reasons, defendant Verizon's motion to dismiss is granted in part and

denied in part.  An appropriate order will be entered.

/s/ Katharine S. Hayden     

Date: March 31, 2015                              Katharine S. Hayden, U.S.D.J.